

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00150-CV

---

IN THE INTEREST OF A.J.G. AND X.G., CHILDREN

---

On Appeal from the 69th District Court
Dallam County, Texas,
Trial Court No. 12451, Honorable Jack Graham, Presiding

---

December 21, 2021

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

S.D., the mother of A.G. and X.G.[1] appeals from an order terminating her parental rights to her two children under provisions of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D). (E), (N), (O), (P), and (2).[2] Father's rights were also terminated, but he did not bring an appeal. By a single issue, Mother asserts the Department's evidence was insufficient to support the trial court's finding that termination of her parental rights was in the children's best interest. For the reasons discussed below, we affirm.

---

[1] To protect the privacy of the children, we refer to S.D. as "Mother" and to the children by their initials.

[2] Subsequent citations to the Texas Family Code will be as "§ ___" and "section ___."

Background

In November 2019, a clerk in a retail store discovered a customer had left behind a purse containing methamphetamine and a pipe. After the police were called, the purse was identified as belonging to Mother. Mother admitted the presence of drugs in her purse, but alternatively claimed they belonged to her sister-in-law or had been planted.

The Department eventually became involved. At first, Mother was uncooperative, denying using drugs and refusing a drug screen. When Mother agreed to participate in a drug screen in December 2019, she tested positive for methamphetamine.[3] The next month, Mother did not appear for several scheduled drug screenings, so the Department sought and obtained an Order in Aid of Investigation of Child Abuse or Neglect from the trial court. When the Department attempted to contact Mother, it learned Mother and the children had left town.

Eventually, Mother was located and indicated she would be returning home. In February 2020, both Mother and X.G., a one-year-old child, tested positive for methamphetamine. The Department requested and obtained an emergency order removing the children and placing them in foster care.[4]

After Mother tested positive for methamphetamine in April, September, and October 2020, the trial court suspended visitation with the children until both parents could participate in a drug screen. Accordingly, Mother and Father both tested positive for illegal drugs in November 2020. Thereafter, Mother entered a thirty-day drug

---

[3] Father also tested positive for methamphetamine.

[4] When the children were removed, Father had a criminal history and was a known methamphetamine user who lived in an abandoned recreational vehicle. He was uncooperative and tested positive for methamphetamine throughout the termination proceedings.

rehabilitation program, which she completed in December 2020.[5] Nevertheless, Mother again tested positive in February 2021.

According to Amanda Herrada, the Department's caseworker, Mother refused to participate in court-ordered drug testing in March 2021. When another drug screen was scheduled for May, Mother twice failed to appear for testing. At the final hearing, Mother admitted her drug use was a danger to her children.

Mother, however, also testified she had "changed." She claimed she had obtained a car, rented a clean apartment,[6] and could purchase food, but presented no proven source of income. Although Mother's family plan required her to attend three weekly AA/NA meetings and meet with a sponsor, she had not identified a sponsor and claimed to have forgotten her sign-in sheet reporting when she did attend. Although she completed some services, she did not perform additional counseling when recommended and was unable to verbalize much of what she learned in parenting classes.

Herrada testified Mother had failed to demonstrate an ability to provide the children with a safe environment; had constructively abandoned the children; had failed to comply with the provisions of the court order necessary for the return of her children; and engaged in conduct and knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the physical or emotional well-being of the children. Meanwhile, evidence was presented that the children were doing very well in their placements. A.G. (who was age seven at the time of final hearing) successfully completed the school year; X.G. (who was age two and a half) attended daycare. The

---

[5] Prior to entering the court-ordered rehabilitation program, Mother had been encouraged to undergo treatment, but refused.

[6] Herrada testified both Mother and Father's names were on a lease.

3

children's foster parents (who also have other children in their home) expressed an interest in adopting A.G. and X.G.

Herrada opined it was in the children's best interest for Mother's parental rights to be terminated. The trial court agreed. In its Order of Termination, the trial court found that clear and convincing evidence supported the conclusion that Mother had violated sections 161.001(b)(1)(D), (E), (N), (O), and (P), and that termination of Mother's parental rights was in the best interest of the children.

## Analysis

On appeal, Mother does not challenge the evidence supporting the trial court's conclusion that she violated predicate grounds (D), (E), (N), (O), and (P). She contends there is legally and factually insufficient evidence to support the finding that termination of her parental rights is in the children's best interest. The applicable standards of review are discussed in our opinion in *In re Z.N.,* 616 S.W.3d 133, 135-36 (Tex. App.—Amarillo 2020, no pet.). There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Nevertheless, "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex.1976).[7] While the *Holley* list

---

[7] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

"is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[8] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

We hold that legally and factually sufficient evidence supports the trial court's finding that termination of Mother's parental rights is in the best interests of the children. *See A. J. R. v. Tex. Dep't of Family & Protective Servs.,* Nos. 03-19-00661-CV, 03-19-00662-CV, 2020 Tex. App. LEXIS 2090, at *23 (Tex. App.—Austin Mar. 12, 2020, no pet.) (citing *In re M.V.G.,* 440 S.W.3d 54, 60 (Tex. App.—Waco 2010, no pet.) (mem. op.)). During the time Mother was the caretaker of the children, she was using methamphetamine. On one occasion, Mother and her one-year-old child tested positive for methamphetamine.

Despite pending termination proceedings and a court-ordered plan of service requiring a drug-free lifestyle, Mother continued regular methamphetamine use. She failed to appear for two other drug tests in the months immediately preceding the final hearing, permitting the trial court to presume she was continuing to use

---

[8] *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent.").

5

methamphetamine.[9]  Mother's efforts at rehabilitation were unsuccessful, as Mother tested positive for methamphetamine months after completion of the program.  This evidence sufficiently permitted the trial court to find that Mother's conduct was endangering to the children's physical and emotional well-being.[10]

The Department's evidence also showed that after they were removed from the home, both children were living in a stable, drug-free home and doing well in their foster placements, school, and daycare.  Their foster parents have also expressed an interest in adopting the children.  Mother's caseworker, Herrada, opined it was in the children's best interest for Mother's parental rights to be terminated, as did the attorney *ad litem* for the children.

Mother testified she was employed by a home health service, but did not have any assigned patients and could not verify any source of income.  Despite Mother's claims that she had "changed," the trial court is permitted to weigh the authenticity of Mother's statements in light of the evidence.[11]  Considering evidence of Mother's section 161.001 violations and best-interest factors in the light most favorable to the trial court's finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of the children.  *See*

---

[9] The trial court reasonably could infer that Mother's failure to submit to court-ordered drug screening indicated she was avoiding testing because she was using drugs.  *See In re W.E.C.*, 110 S.W.3d 231, 239 (Tex. App.—Fort Worth 2003, no pet.) (collected cases cited therein).

[10] "A parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing the child, may support a finding to a clear and convincing degree that the parent engaged in conduct that endangered the child's physical or emotional well-being"  *In re GC,* No. 14-18-01114-CV, 2019 Tex. App. LEXIS 3771, at *16 (Tex. App.—Houston [14th Dist.] May 9, 2919, pet. denied) (mem. op.).

[11] Mother's reliance on this Court's holding in *In re C.A.M.*, No. 07-21-00043-CV, 2021 Tex. App. LEXIS 6947 (Tex. App.—Amarillo Aug. 17, 2021) is misplaced.  Unlike *C.A.M.*, the caseworker and attorney *ad litem* each opined that termination of parental rights was in the children's best interest, Mother did not complete her service plan and she continued using methamphetamine throughout the termination proceedings despite knowing her parental rights were at risk.

*In re K.M.L.*, 443 S.W.3d 101, 116 (Tex. 2014) (legal sufficiency standard). And, viewing all such evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding also permitted a reasonable factfinder to form a firm belief or conviction that termination was in the children's best interest. *See In re A.B.*, 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard). Appellant's single issue is overruled.

Conclusion

The trial court's judgment is affirmed.


Lawrence M. Doss
Justice